01
02
03
04
05
              UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
06
                       AT SEATTLE

| | | |
|---|---|---|
| 07 TROY MICHELLE JOHNSON, | ) | CASE NO. C13-1139-RSM-MAT |
| 08       Plaintiff, | ) | |
| | ) | |
| 09     v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY DISABILITY |
| 10 CAROLYN W. COLVIN, Acting | ) | APPEAL |
| Commissioner of Social Security, | ) | |
| 11 | ) | |
|       Defendant. | ) | |
| 12 _____ | ) | |

13      Plaintiff Troy Michelle Johnson proceeds through counsel in her appeal of a final

14 decision of the Commissioner of the Social Security Administration (Commissioner). The

15 Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and

16 Social Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).

17 Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the

18 Court recommends this matter be AFFIRMED.

19                  **FACTS AND PROCEDURAL HISTORY**

20      Plaintiff was born on XXXX, 1971.[1] She completed the eleventh grade of high

21

22      1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

01  school and previously worked as a certified nurse assistant, tour guide, hospital admitting clerk,

02  and furniture mover.  (AR 42, 66-67.)

03      Plaintiff protectively filed applications for DIB and SSI in August 2009, alleging

04  disability since September 1, 2007.  (AR 140, 145.)  Her applications were denied initially

05  and on reconsideration, and she timely requested a hearing.

06      ALJ Stephanie Martz held a hearing on August 30, 2011, taking testimony from

07  plaintiff and a vocational expert (VE).  (AR 37-72.)  On October 5, 2011, the ALJ rendered a

08  decision finding plaintiff not disabled.  (AR 16-29.)  Plaintiff timely appealed.

09      The Appeals Council denied plaintiff's request for review on May 31, 2013 (AR 1-6),

10  making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this

11  final decision of the Commissioner to this Court.

12                        **JURISDICTION**

13      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

14                        **DISCUSSION**

15      The Commissioner follows a five-step sequential evaluation process for determining

16  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

17  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

18  not engaged in substantial gainful activity since the alleged onset date.   At step two, it must be

19  determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

20  fibromyalgia, status post carpal tunnel syndrome with status post carpal tunnel release,

21  depressive disorder, anxiety/panic disorder, and history of drug use severe.  Step three asks

22

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01  whether a claimant's impairments meet or equal a listed impairment.   The ALJ found

02  plaintiff's impairments did not meet or equal the criteria of a listed impairment.

03      If a claimant's impairments do not meet or equal a listing, the Commissioner must

04  assess residual functional capacity (RFC) and determine at step four whether the claimant has

05  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

06  to perform light work, specifically:   she can lift and carry twenty pounds occasionally and ten

07  pounds frequently; she can stand and/or walk about six hours in eight-hour day, and sit about

08  six hours in an eight-hour day; and she can occasionally climb and frequently balance, stoop,

09  kneel, crouch, and crawl.   The ALJ also found plaintiff can perform simple routine tasks and

10  some familiar detailed tasks, and should work away from the public, but can have occasionally

11  brief and superficial contact with coworkers and supervisors.   With this RFC, the ALJ found

12  plaintiff unable to perform past relevant work.

13      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

14  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

15  an adjustment to work that exists in significant levels in the national economy.   Considering

16  the Medical-Vocational Guidelines and the testimony of the VE, the ALJ concluded there were

17  jobs existing in significant numbers in the national economy plaintiff could perform, such as

18  work as a stuffer, hand bander, surveillance system monitor, and selected security guard

19  positions.   The ALJ, therefore, concluded plaintiff was not disabled at any time from the

20  alleged onset date through the date of the decision.

21      This Court's review of the final decision is limited to whether the decision is in

22  accordance with the law and the findings supported by substantial evidence in the record as a

REPORT AND RECOMMENDATION
PAGE -3

01  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

02  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

03  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

04  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

05  supports the final decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

06  F.3d 947, 954 (9th Cir. 2002).

07       Plaintiff argues the ALJ erred in failing to properly consider a cognitive disorder at step

08  two and beyond, in failing to provide sufficient reasons for rejecting the opinions of the

09  examining physician who diagnosed that disorder, and in giving greater weight to the opinions

10  of non-examining State agency consultants than to the opinions of the examining physician.

11  She requests remand for further administrative proceedings.   The Commissioner maintains the

12  ALJ's decision has the support of substantial evidence and should be affirmed.

13                                   Step Two

14       At step two, a claimant must make a threshold showing that her medically determinable

15  impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

16  *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

17  activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

18  404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

19  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

20  effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

21  1996 (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis

22  screening device to dispose of groundless claims."   *Id*. (citing *Bowen*, 482 U.S. at 153-54).

REPORT AND RECOMMENDATION
PAGE -4

01 An ALJ is also required to consider the "combined effect" of an individual's impairments in

02 considering severity.   *Id.*   A diagnosis alone is not sufficient to establish a severe impairment.

03 Instead, a claimant must show that his medically determinable impairments are severe.   20

04 C.F.R. §§ 404.1520(c), 416.920(c).

05          In this case, Dr. Silverio Arenas rendered March 2010 opinions as follows:

06          Mental status examination noted mild-to-significant problems in the areas of
           attitude/behavior, affect/mood, thought flow, remote memory, recent memory,
07          knowledge fund, attention/concentration, and in judgement[sic]/insight with
           other aspects being normal.   The Burns scales suggested a severe level of
08          depression and an extreme level of anxiety with related symptoms.   Overall, the
           client's abilities to reason and understand, attend/concentrate, remember, pace,
09          persist, and to tolerate/manage stress are all adequately functional relative to the
           presenting problems, within present limited/curtailed interactive environment,
10          but would be dysfunctional outside of that, as in any competitive work situation.

11 (AR 591.)   The "diagnoses suggested" included cognitive disorder, anxiety disorder, cannabis

12 and polysubstance dependence in reported full sustained remission, nicotine dependence,

13 depressive disorder, and personality disorder.   (*Id*.)

14          The existence of a cognitive disorder diagnosis, standing alone, does not establish a

15 severe impairment.   Nor is it clear whether Dr. Arenas found plaintiff more than mildly limited

16 in relation to a cognitive disorder given that he diagnosed numerous conditions and opined as to

17 "mild-to-significant problems" in a number of areas without differentiating between those areas

18 or the conditions diagnosed.   As related to cognitive abilities, Dr. Arenas did, on mental status

19 examination (MSE), identify "thought flow" verbalizations that were "at times rapid/impulsive

20 or slowed/delayed", errors in recent memory recall, and errors in attention/concentration on

21 serial seven subtraction and one error on a three-step command.   (AR 589.)   However,

22 plaintiff's thought flow was "normal otherwise", with no tangential ideation or

REPORT AND RECOMMENDATION
PAGE -5

01 circumstantiality, and intact goal direction and cohesiveness; she was fully oriented; she had

02 general, but adequate remote memory; her immediate memory was intact with one error; her

03 knowledge fund was accurate as to seven out of nine questions asked; she, in relation to

04 attention/concentration, was able to perform serial threes, spell "world" forward and backward

05 quickly, and adequately followed conversation and attended to questions; and she had no

06 problems with perception, abstraction, or judgment/insight, outside of "continu[ing] to smoke

07 heavily in spite of health issues."   (*Id.*)

08      In any event, even assuming the evidence from Dr. Arenas is reasonably construed as

09 sufficient to establish a severe cognitive disorder impairment, the Court finds the failure to

10 deem this impairment severe at step two harmless error.   As a general principle, an ALJ's error

11 may be deemed harmless where it is "'inconsequential to the ultimate nondisability

12 determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).

13 The Court looks to "the record as a whole to determine whether the error alters the outcome of

14 the case."   *Id*.   Also, the failure to list an impairment as severe at step two is harmless where

15 limitations associated with that impairment are considered at step four.   *Lewis v. Astrue*, 498

16 F.3d 909, 911 (9th Cir. 2007).

17      In this case, there is no question the ALJ considered evidence associated with a

18 cognitive disorder at step four.   The evidence included that plaintiff was found to have no

19 cognitive deficits on MSE testing and assessed with no cognitive limitations by examining

20 physician Dr. Anselm Parlatore in August 2006, June 2008, and April 2009.   (AR 25, 297, 323,

21

22

REPORT AND RECOMMENDATION
PAGE -6

01  599.)[2]   While Dr. Parlatore did assess marked limitations in some cognitive abilities in May

02  2011, he also stated:  "No clinically relevant cognitive deficits."  (AR 738-39.)  The ALJ

03  found Dr. Parlatore's "extreme findings" in relation to social functioning, and the 2011 findings

04  as a general matter, unsupported by counseling records or plaintiff's reports to her care

05  providers, noted he failed to explain or support his findings, including the change in cognitive

06  limitations between June 2010 and May 2011, observed that the MSE's were normal, and

07  determined that it appeared Dr. Parlatore based his opinions on plaintiff's subjective reports,

08  which the ALJ found not credible.  (AR 25.)  Plaintiff does not challenge, and the Court sees

09  no error in the consideration of either Dr. Parlatore's opinions or plaintiff's credibility.[3]

10          The ALJ subsequently considered the report from Dr. Arenas, but found the opinions

11  expressed by this physician inconsistent with examination findings of few limitations, and

12  deemed it "heavily based" on plaintiff's self-reports, which the ALJ found not entirely credible.

13  (*Id*.)  She noted, as examples in support of this conclusion, that plaintiff "did not disclose

14  recent work activity in the record including work for a family business and more recent work on

15  a farm[,]" and that plaintiff "herself testified her depression was mild."  (AR 25.)  The ALJ

16  also considered and assigned significant weight to the opinions of non-examining physicians

17  Dr. Thomas Clifford and Dr. John Robinson, dated in November 2009 and April 2010

18          2 While the ALJ described Dr. Parlatore's June 2008 and April 2009 reports as assessing mild
19  limitations in cognitive functioning, he, in fact, found no limitations in that area.  (*Compare* AR 25,
    *with* AR 297, 323.)

20          3 Plaintiff did not, in her opening brief, challenge the ALJ's credibility assessment.  (*See* Dkt.
21  19.)  To the extent she raises any such challenges in her reply (*see* Dkt. 25), the Court finds those
    arguments waived.  *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009)
    ("[A]rguments not raised by a party in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901
22  F.2d 814, 818 (9th Cir. 1990)).

REPORT AND RECOMMENDATION
PAGE -7

01  respectively and finding plaintiff could perform as reflected in the RFC assessed by the ALJ.

02  As addressed separately below, the Court finds no error in the ALJ's consideration of the

03  opinions of these physicians.

04      In sum, and considering the record and the ALJ's decision as a whole, the Court

05  concludes that the ALJ adequately considered the evidence associated with the cognitive

06  disorder diagnosed by Dr. Arenas in considering that physician's opinion and other medical

07  evidence at step four.   Accordingly, the failure to discuss or identify a cognitive disorder as

08  severe at step two was, at most, harmless error.

09                    <u>Psychiatric Review Technique and Step Three</u>

10      Upon identification of a colorable claim of mental impairment, an ALJ must apply a

11  "special technique[.]"   20 C.F.R. §§ 404.1520a(a), 416.920a(a); *Keyser v. Comm'r, Soc. Sec.*

12  *Admin.*, 648 F.3d 721, 725-26 (9th Cir. 2011).   An ALJ's decision must include a specific

13  finding as to the degree of mental limitation in each of four broad functional areas, including:

14  activities of daily living; social functioning; concentration, persistence and pace; and episodes

15  of decompensation.   §§ 404.1520a(c), (e); 416.920a(c), (e).

16      At step three of the sequential evaluation, the ALJ considers whether one or more of

17  plaintiff's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the

18  regulations.   Each listing sets forth the "symptoms, signs, and laboratory findings" that must

19  be established in order for a claimant's impairment to meet the listing.   *Tackett v. Apfel,* 180

20  F.3d 1094, 1099 (9th Cir. 1999).

21      Plaintiff argues error in the ALJ's failure to consider her severe cognitive disorder in

22  applying the special technique or in relation to listing 12.02 (organic mental disorders).

01  However, and again assuming error at step two, the Court finds no error established.

02      The ALJ applied the special technique in considering plaintiff's mental impairments,

03  finding mild restrictions in activities of daily living, moderate difficulties in social functioning

04  and in concentration, persistence, or pace, and no extended episodes of decompensation.   (AR

05  20-21.)   She provided sufficient support for her conclusions, pointing to:   plaintiff's ability to

06  care for herself and her dogs, prepare her own meals, perform house and yard work (limited

07  only by pain and need to rest, not mental limitations), go outside once a day, drive a car, and

08  shop in stores once a month; plaintiff's ability to talk on the phone with others every day, ability

09  to get along with others, and her November 2011 report of having more social interactions with

10  friends; that she can pay bills, count change, and handle a savings account, has hobbies

11  including reading and crafts (with crafts limited due to pain), her report she followed written

12  and spoken instructions well, and her testimony she "would watch a movie and read books to

13  pass the time, and then clarified, when she could concentrate."   (*Id.*)   Even without specific

14  mention of a cognitive disorder at steps two or three, the ALJ's evaluation of the four broad

15  functional areas was proper and supported by substantial evidence in the record.   Plaintiff fails

16  to demonstrate that, with identification of a severe cognitive disorder at step two, the ALJ's

17  application of the special technique would have been different in any respect.

18      Likewise, plaintiff demonstrates no error at step three.   She, at most, merely asserts

19  error in the failure to consider a cognitive disorder listing.   However, she sets forth no theory,

20  plausible or otherwise, as to how her impairment, alone or in combination with other

21  impairments, satisfies or equals a listing.   *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (no

22  error at step three where claimant "offered no theory, plausible or otherwise, as to how"

REPORT AND RECOMMENDATION
PAGE -9

01     impairments equaled a listing).   *See also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)

02     ("An ALJ is not required to discuss the combined effects of a claimant's impairments or

03     compare them to any listing in an equivalency determination, unless the claimant presents

04     evidence in an effort to establish equivalence.").   Nor is any such theory apparent.   *See*, *e.g.*,

05     20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.01.   This argument, as such, also fails.

06     <u>Physicians' Opinions</u>

07         The ALJ was required to provide specific and legitimate reasons, supported by

08     substantial evidence in the record, for rejecting the contradicted opinions of Dr. Arenas.

09     *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   The ALJ may reject physicians' opinions

10     "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

11     stating his interpretation thereof, and making findings."   *Reddick v. Chater*, 157 F.3d 715, 725

12     (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).   Rather than merely stating her

13     conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than

14     the doctors', are correct."   *Id*.   (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

15     1988)).

16         As a general matter, more weight should be given to the opinion of an examining

17     physician than to a non-examining physician.   *Lester*, 81 F.3d at 830.   Also, "[t]he opinion of

18     a nonexamining physician cannot by itself constitute substantial evidence that justifies the

19     rejection of the opinion of either an examining physician or a treating physician."   *Id*. at 831

20     (cited sources omitted).   However, "the report of a nonexamining, nontreating physician need

21     not be discounted when it 'is not contradicted by *all other evidence* in the record.'"   *Andrews v.*

22     *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in

REPORT AND RECOMMENDATION
PAGE -10

01  original).)

02      In this case, the ALJ accurately described the opinions of Dr. Arenas.  (AR 25, 591.)

03  She also noted that Dr. Arenas recommended plaintiff continue medical care and mental health

04  services, and that her history of illegal substances may have been underreported.   (AR 25 and

05  592.)   The ALJ assigned "less weight" to the opinions of Dr. Arenas, finding them

06  "inconsistent with examination findings of few limitations."  (AR 25.)  She elaborated:

> He noted the few limitations were due to her limited/curtailed environment and
> she would likely be dysfunctional in a competitive work environment.
> However, given the findings on examination, I find that this opinion is heavily
> based on the claimant's self-reports, reports I do not find entirely credible.   For
> example, the claimant did not disclose recent work activity in the record
> including work for a family business and more recent work on a farm.   The
> claimant herself testified that her depression was mild.

11  (*Id.*)  The Court, for the reasons discussed below, finds the ALJ's consideration of the opinions

12  of Dr. Arenas and other medical opinions of record legally sufficient.

13      An ALJ appropriately considers inconsistencies in rejecting a physician's opinions.

14  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record

15  properly considered); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting

16  physician's opinion due to discrepancy or contradiction between opinion and the physician's

17  own notes or observations is "a permissible determination within the ALJ's province.");

18  *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999) (internal

19  inconsistencies within and between physicians' reports properly considered).   Here, the testing

20  results from Dr. Arenas are reasonably construed as inconsistent with the opinions as to some

21  "significant" problems and an inability to function adequately in a competitive work setting.

22  (AR 591.)  For example, in addition to the minimal findings relating to cognitive abilities

01  outlined above, Dr. Arenas noted plaintiff "[w]as cautiously friendly, cordial, apprehensive,

02  anxious, a bit defensive, guarded, but cooperative;" with pain behaviors and adequate eye

03  contact, that her facial expression "was toward the sad side, but flexibly responsive to

04  cueing[,]" and that her "subjective self-rating" for depression and anxiety were high.  (AR

05  588-89.)   The ALJ had also just prior to the assessment of Dr. Arenas's opinions described the

06  normal MSE findings of Dr. Parlatore.  (AR 25.)   To the extent plaintiff takes a different view

07  of the evidence, she fails to demonstrate the ALJ's interpretation was not rational.  *See*

08  *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational

09  interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews*, 53 F.3d at

10  1041).   Also, while the ALJ did not list out the MSE findings of Dr. Arenas, she rejected Dr.

11  Arenas's opinions based on inconsistency with those findings, and the Court has no difficulty in

12  understanding the basis for the ALJ's conclusion.  *See Magallanes*, 881 F.2d at 755 ("As a

13  reviewing court, we are not deprived of our faculties for drawing specific and legitimate

14  inferences from the ALJ's opinion.").

15       "An ALJ may [also] reject a treating [or examining] physician's opinion if it is based 'to

16  a large extent' on a claimant's self-reports that have been properly discounted as incredible."

17  *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602).  In this case, the ALJ

18  provided a number of clear and convincing reasons for finding plaintiff not entirely credible,

19  including evidence of her inconsistent reporting about her substance use, discrepancies in the

20  record in relation to her reporting as to work activities and her level of education, numerous

21  other inconsistencies between her allegations as to the degree of her limitation and evidence in

22  the record, inconsistent objective medical evidence, and evidence of improvement in her mental

01  health symptoms and minimal evidence of mental health care and treatment.  (AR 22-25.)

02  The ALJ here reasonably discounted the opinions of Dr. Arenas as based heavily on

03  plaintiff's discredited self-reports.  She noted Dr. Arenas's specific reference to plaintiff's

04  "limited/curtailed interactive environment[,]" and pointed to specific, contradictory evidence in

05  the record, including plaintiff's failure to disclose her recent work activity for a family business

06  and more recent work on a farm, and her own testimony that her depression was mild.  (AR

07  25.)  (*Compare* AR 24 (plaintiff testified she last worked six or seven years earlier in

08  marketing, but elsewhere reported she stopped working in 2007, when her business folded, and

09  was self-employed at the time; in July 2009, plaintiff told a provider "she works on a farm from

10  5 a.m. to 3 p.m.", which she denied at hearing; also noting she reported to an examiner in June

11  2010 that she had not left the house in two years), *with* AR 588 (plaintiff reported to Dr. Arenas

12  that she "has not been able to work in the past five years").)  (*See also* AR 24 (plaintiff reported

13  in 2009 that she was "feeling much better since she has been in counseling[]" and, in March

14  2011, that she had met her treatment goals after six counseling sessions) and AR 49 (plaintiff

15  testified she gets "depressed probably a few days out of the month."))  As observed by the

16  Commissioner, Dr. Arenas also reflects his reliance on plaintiff's self-reporting of her

17  symptoms on the Burns Depression Checklist and Anxiety Inventory.  (AR 590-91.)

18  The ALJ further properly relied on the contradictory evidence from the non-examining

19  State agency physicians.  (AR 26; AR 430-31, 580.)[4]  As demonstrated in the discussions

20  above, the opinions of these physicians were not contradicted by all other evidence in the

21  _____

22  4 As the Commissioner observes, the ALJ properly reflected the opinions of Dr. Clifford as expressed in the narrative portion of the form completed, not the preceding "check-box" portion of that form.  (AR 26, 430-31.)  *See* Program Operations Manual System (POMS) DI 25020.010 at B.1

REPORT AND RECOMMENDATION
PAGE -13

01   record, with the evidence including normal MSE's on multiple occasions and contradictory

02   medical evidence, as well as numerous issues bearing on plaintiff's credibility.   Also, the mere

03   fact that these physicians did not have the opportunity to review the report from Dr. Arenas

04   does not undermine the substantial evidence support for the ALJ's decision.  *See Han v.*

05   *Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989) ("While Dr. Ebert would unquestionably have

06   been better informed had he reviewed the test results before concluding that Han is capable of

07   performing light or medium work, the Secretary's decision is nevertheless supported by

08   substantial evidence.")   Therefore, the ALJ's assessment of this and other medical opinion

09   evidence of record has the support of substantial evidence and should not be disturbed.

10 Step Four

11      Plaintiff argues that, given the alleged errors discussed above, the ALJ erred in failing to

12   properly incorporate sufficient mental limitations into the RFC.   However, because the Court

13   finds no error in relation to a cognitive disorder or the ALJ's consideration of the medical

14   evidence, this restating of plaintiff's argument fails to establish error at step four or step five.

15   *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

16 CONCLUSION

17      For the reasons set forth above, this matter should be AFFIRMED.

18      DATED this 1st day of April, 2014.

19

20                            Mary Alice Theiler

21                            Chief United States Magistrate Judge

22

REPORT AND RECOMMENDATION
PAGE -14